ALLSTATE INSURANCE COMPANY v MILLER

Docket No. 101696. Submitted October 12, 1988, at Detroit. Decided
     March 6, 1989. Leave to appeal applied for.

   Alvin Freeman entered the Rialto Restaurant, pulled a gun and
     began shooting, causing the death of Jack Bylski and Karen
     Taylor and the wounding of Dan Bolen before he was killed by
     police. Lawsuits were filed against Freeman which Allstate
     Insurance Company, Freeman's homeowners insurer, began to
     defend. Allstate brought an action against Judith Miller, per-
     sonal representative of the estate of Jack Bylski, deceased,
     Mary Rita Bylski, Sandra Silver, personal representative of the
     estate of Alvin Freeman, deceased, and others in the Oakland
     Circuit Court to declare that coverage was forfeited under an
     exclusionary clause for "bodily injury or property damage
     which may reasonably be expected to result from the inten-
     tional or criminal acts of the insured person or which is in fact
     intended by the insured person." The court, Norman L. Lippitt,
     J., granted summary disposition for plaintiff. Miller and Bylski
     appealed. Silver cross-appealed.

   The Court of Appeals *held:*

   Where a person could not form an intent to act because of
     insanity, he has not acted "intentionally" as that term is used
     in insurance policies unless the policy explicitly states other-
     wise. Defendants presented expert testimony which indicated
     that Freeman either was not aware of what he was doing or
     was unable to control his actions when he embarked on his
     killing spree. Consequently, there existed a genuine issue of
     material fact whether Freeman acted intentionally so as to
     invoke the exclusionary clause and preclude coverage under
     the homeowners insurance policy, and the grant of summary
     disposition was improper.

   Reversed.

REFERENCES

Am Jur 2d, Insurance §§ 708, 709.
Intoxication or other mental incapacity avoiding application of
     clause in liability policies specifically exempting coverage of
     injury or damage caused intentionally by or at direction of
     insured. 33 ALR4th 983.

INSURANCE — INTENT — INSANITY — JUDICIAL CONSTRUCTION.
  Where a person could not form an intent to act because of
  insanity, he has not acted "intentionally" as that term is used
  in insurance policies unless the policy explicitly states other-
  wise.

*Garan, Lucow, Miller, Seward, Cooper & Becker,
P.C.* (by *James L. Borin* and *Rosalind Rochkind*),
for plaintiff.

*Richard A. Lenter,* for Judith Miller and Mary
Rita Bylski.

Before: WEAVER, P.J., and MAHER and C. W.
SIMON, JR.,* JJ.

PER CURIAM. Defendants Judith Miller, as per-
sonal representative of the Estate of Jack Bylski,
deceased, and Mary Rita Bylski appeal as of right
from the June 2, 1987, opinion and order of the
Oakland Circuit Court granting summary disposi-
tion to plaintiff Allstate Insurance Company on its
declaratory judgment action. Defendant Sandra
Silver, as personal representative of the Estate of
Alvin Freeman, deceased, cross-appeals from the
same opinion and order. The trial court, in con-
struing the language of an insurance policy issued
by Allstate to Alvin Freeman, held that no genu-
ine issue of fact existed as to whether Allstate was
liable to defendants, and others, for injuries in-
flicted upon them by Freeman. We reverse.

On July 3, 1984, Alvin Freeman (Allstate's in-
sured) entered the Rialto Restaurant in Ferndale,
Michigan, and, after ordering a couple of drinks,
pulled out a handgun and started shooting ran-
domly throughout the restaurant. The shots killed
one patron, Jack Bylski, and wounded another,
Dan Bolen. Freeman grabbed a waitress, Karen

* Circuit judge, sitting on the Court of Appeals by assignment.

Taylor, and held her hostage inside the building. The police soon arrived and attempted negotiating with him. For no apparent reason, though, he shot Taylor in the head. The police, responding to Taylor's scream for help, stormed the building and a gun battle ensued. When it was over, Freeman was found fatally wounded and Taylor was found suffering a massive head wound. She remained comatose for more than a year and eventually passed away.

Several lawsuits were thereafter commenced against Freeman in the Oakland Circuit Court, which Allstate began to defend in accordance with a homeowners insurance policy it had issued to Freeman. However, Allstate believed it was not liable under the policy and so initiated a declaratory judgment action in the United States District Court for the Eastern District of Michigan. Allstate claimed that coverage was forfeited under an exclusionary clause because of the intentional or criminal acts of the insured.

The federal case proceeded to trial first and resulted in a mistrial. Before a new trial could be commenced the Sixth Circuit Court of Appeals issued an opinion holding that declaratory judgment cases should generally not be heard by federal courts where, as here, jurisdiction is established by diversity of citizenship. Consequently, the federal district court dismissed the case without prejudice. Allstate then filed the instant declaratory judgment action in the Oakland Circuit Court.

Shortly after commencing this action, Allstate filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10). Allstate claimed that, in light of the exclusionary clause in the insurance policy, "there is no genuine issue of material fact that the actions alleged against the Estate of

Freeman and the resulting injuries which form the basis of [the defendants' circuit court suits] were reasonably expected or intended to result from Alvin Freeman's intentional or criminal acts." Oral arguments on the motion were heard on April 29, 1987.

On June 2, 1987, the trial court issued an opinion granting summary disposition to Allstate pursuant to MCR 2.116(C)(10), no genuine issue of material fact. The court interpreted the insurance policy's exclusionary clause as not requiring a showing of intent where the injury could be reasonably expected from the act itself. Because it believed the injuries inflicted by Freeman were the natural, foreseeable, and expected results of his actions, summary disposition was granted in favor of Allstate. An order to that effect was entered on June 16, 1987. This appeal followed.

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *St Paul Fire & Marine Ins Co v Quintana,* 165 Mich App 719, 722; 419 NW2d 60 (1988). In ruling on the motion, the trial court must consider not only the pleadings but also any depositions, affidavits, admissions, or other documentary evidence submitted by the parties. MCR 2.116(G)(5). The test is whether the kind of record which might be developed, giving the benefit of any reasonable doubt to the nonmoving party, would leave open an issue upon which reasonable minds might differ. *Linebaugh v Berdish,* 144 Mich App 750, 754; 376 NW2d 400 (1985). The motion must not be granted unless the trial court is satisfied that the nonmoving party's claim is impossible to support because of some deficiency which cannot be overcome. *Dzierwa v Michigan Oil Co,* 152 Mich App 281, 284; 393 NW2d 610 (1986). This Court is

liberal in finding a genuine issue of material fact. *Linebaugh, supra.*

In deciding whether summary disposition was appropriate in the instant case, we must look to some of the basic rules applicable to the construction of insurance contracts. Insurance contracts must be interpreted by reading them as a whole. *Boyd v General Motors Acceptance Corp,* 162 Mich App 446, 452; 413 NW2d 683 (1987). The contract language must be given its ordinary and plain meaning, not a technical or strained construction. *Wilson v Home Owners Mutual Ins Co,* 148 Mich App 485, 490; 384 NW2d 807 (1986). If, after reading the entire contract, it can reasonably be understood in different ways—one providing coverage and the other excluding coverage—the ambiguity is to be liberally construed against the insurer and in favor of coverage. *Raska v Farm Bureau Mutual Ins Co of Michigan,* 412 Mich 355, 362; 314 NW2d 440 (1982), reh den 412 Mich 1119 (1982). Furthermore, exclusionary clauses in insurance contracts are to be strictly construed against the insurer. *Westen v Karwat,* 157 Mich App 261, 264; 403 NW2d 115 (1987). But, where the contract language is clear, unambiguous, and not in contravention of public policy, its terms will be enforced as written. *Raska, supra,* pp 361-362; *Usher v St Paul Fire & Marine Ins Co,* 126 Mich App 443, 447; 337 NW2d 351 (1983). With those principles in mind, we conclude that the contract language in question is indeed ambiguous as to whether or not coverage is excluded.

The exclusionary clause of the insurance policy provides:

> We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of the

insured person or which is in fact intended by the insured person.

Allstate argues, as it did below, that coverage is excluded whenever (1) the injury was reasonably expected to occur from the insured's acts or (2) the injury was specifically intended by the insured. Although that may arguably be a reasonable construction of the policy language, we find it to be subject to a narrower, and perhaps more reasonable, construction. The way we read the exclusionary clause, coverage is excluded if (1) the injury was specifically intended or reasonably likely to occur *and* (2) the insured acted intentionally or criminally at the time the injury resulted. Hence, there are two separate mind states at issue: the intention to act and the intention to cause a specific or reasonably expected injury.

An examination of prior case law supports our construction of the policy language. In *Morrill v Gallagher,* 370 Mich 578, 583; 122 NW2d 687 (1963), our Supreme Court was called upon to construe an insurance contract which excluded coverage for "injury, sickness, disease, death or destruction caused intentionally by or at the direction of the insured." The Court held that, while it was unquestionable the insured acted intentionally, he had not intended to cause any physical harm to the plaintiff. *Id.,* p 588. Thus, when construing policy language excluding coverage for intentionally caused injuries, our Supreme Court has recognized a distinction between an intent to act and an intent to cause a specific injury. See also *Vermont Mutual Ins Co v Dalzell,* 52 Mich App 686, 692; 218 NW2d 52 (1974), lv den 392 Mich 803 (1974); *Connecticut Indemnity Co v Nestor,* 4 Mich App 578, 580-581; 145 NW2d 399 (1966).

Policy language of the type at issue in this case seemingly was drafted to avoid the restrictive constructions of *Morrill* and its progeny. Under the new language, the specific injury need not be intended if it was "reasonably expected," i.e., the injury was the natural, foreseeable, and expected result of an intentional act. See *State Farm Fire & Casualty Co v Jenkins,* 147 Mich App 462, 467-468; 382 NW2d 796 (1985). That language constitutes a broader and more encompassing exclusion than language which requires both an intent to act and an intent to injure. See *Jenkins, supra; Yother v McCrimmon,* 147 Mich App 130, 133-134; 383 NW2d 126 (1985); *Michigan Millers Mutual Ins Co v Berry,* 123 Mich App 634, 638; 333 NW2d 70 (1983). However, even under this broader exclusion, there must still be an intention to act.

In the criminal law context, it is well-established that insanity may preclude a person from forming a certain specific intent. See LaFave & Scott, Criminal Law, § 36, pp 268-274. Although we could find no Michigan case law which has considered whether, in the insurance law context, a person's insanity precludes him or her from acting intentionally, other jurisdictions which have addressed the issue have generally held this to be so. See Anno: *Liability insurance: intoxication or other mental incapacity avoiding application of clause in liability policy specifically exempting coverage of injury or damage caused intentionally by or at direction of insured,* 33 ALR4th 983, 988, and cases cited therein. Contra, *Johnson v Ins Co of North America,* 232 Va 340; 350 SE2d 616 (1986); *Colonial Life & Acc Life Ins Co v Wagner,* 380 SW2d 224 (Ky App, 1964). We agree with those states which have held that, when a person cannot form an intent to act because of insanity, he or she has not acted "intentionally" as that term is used

in insurance policies, unless the policy explicitly states otherwise. This holding is most consistent with the basic rule of insurance contract construction that ambiguities in a policy are construed against the insurer and in favor of coverage. See *Johnson, supra* (Stephenson, J., dissenting).

In the instant case, defendants presented expert testimony which indicated that Freeman either was not aware of what he was doing or was unable to control his actions when he embarked on his killing spree. Consequently, there existed a genuine issue of material fact whether Freeman acted intentionally so as to invoke the exclusionary clause and preclude coverage under the homeowners insurance policy. Summary disposition in favor of Allstate was therefore improper.

Reversed.