TRANSAMERICA INSURANCE CORPORATION OF AMERICA v
BOUGHTON

Docket No. 96542. Submitted March 4, 1988, at Grand Rapids. De-
cided June 5, 1989.

Michael Boughton fatally shot his estranged wife, Joni. The
criminal prosecution of Boughton resulted in a directed verdict
of not guilty by reason of insanity. Cynthia P. Klinger, personal
representative of the estate of Joni R. Boughton, deceased, filed
a wrongful death action against Boughton, and he sought to
have his homeowner's liability insurer, Transamerica Insur-
ance Corporation of America, provide a defense to the lawsuit
under the terms of his homeowner's policy. Transamerica de-
nied that it had a duty to provide a defense, relying on the
section of the policy which excludes from coverage a claim for
bodily injury, personal injury, or property damage which is
expected or intended by the insured. Transamerica filed a
declaratory judgment action in Kalamazoo Circuit Court nam-
ing Boughton and Klinger as defendants and requesting a
determination that Boughton's policy did not provide coverage
for any liability established in the wrongful death action and
that plaintiff had no duty to defend Boughton in the wrongful
death suit. The court, Richard R. Lamb, J., concluded that
Boughton intended and expected bodily injury and ruled that
the intentional and expected acts exclusion in the homeowner's
policy relieved plaintiff of the duty to defend and provide
coverage to Boughton in the wrongful death action. Defendants
appealed.

The Court of Appeals *held*:

The fact that Boughton was found not guilty by reason of
insanity does not preclude Transamerica from proving at trial
that Boughton's conduct falls within the intentional and ex-
pected acts exclusion of the policy. An acquittal by reason of

REFERENCES

Am Jur 2d, Insurance § 708.

Liability insurance: intoxication or mental incapacity avoiding ap-
plication of clause in liability policy specifically exempting cover-
age of injury or damage caused intentionally by or at direction of
insured. 33 ALR4th 983.

insanity is not an adjudication of lack of intent, and given the lower standard of proof in the civil case, there was no contradiction in acquitting Boughton on grounds of insanity at his criminal trial and subsequently finding in the civil action that Joni Boughton's death was intentional and expected.

Affirmed.

G. SCHNELZ, J., dissented. He would hold that a person found not guilty by reason of insanity cannot in a later action be declared to have expected or intended the results of the act of which he has been acquitted. He would also hold that if an insured suffers from insanity, his actions cannot be intentional for purposes of an exclusion in an insurance policy. He would reverse and remand for entry of a judgment declaring that Transamerica has a duty to provide coverage to and defend Boughton in the wrongful death action.

INSURANCE — EXCLUSIONS — INTENTIONAL OR EXPECTED INJURIES — CRIMINALLY INSANE INSURED.

The fact that a person insured under a homeowner's liability insurance policy is acquitted of criminal charges for certain acts by reason of insanity does not preclude the insurer from denying that it has any duty to provide a defense or liability coverage for the insured where a civil lawsuit is filed against the insured for injuries resulting from his actions and the insurance policy excludes coverage for bodily injury, personal injury, or property damage which is expected or intended by the insured; an injury inflicted by a person who is mentally ill or insane may be intentional within the meaning of such an exclusion.

*Dilley, Dewey & Damon, P.C.* (by *Jonathon S. Damon*), for plaintiff.

*Ryan & Ryan* (by *William J. Ryan*), for Cynthia P. Klinger.

Before: SULLIVAN, P.J., and MACKENZIE and G. SCHNELZ,* JJ.

MACKENZIE, J. On August 10, 1982, defendant Michael Boughton fatally shot his estranged wife, Joni. The criminal prosecution of Boughton re-

* Circuit judge, sitting on the Court of Appeals by assignment.

sulted in a directed verdict of not guilty by reason
of insanity.

At the time of the fatal shooting, the Boughtons
were covered by plaintiff's standard homeowner's
liability policy which provided coverage for any
claim against the insured for damages because of
bodily injury, personal injury, or property damage.
Coverage included plaintiff's obligation to provide
a defense. Section II of the policy excluded from
coverage a claim for bodily injury, personal injury,
or property damage "which is expected or intended
by the insured."

Plaintiff filed the instant declaratory judgment
action after the estate of Joni Boughton instituted
a wrongful death action against Boughton. Plain-
tiff requested a determination that the homeown-
er's insurance policy issued by plaintiff to Bough-
ton did not provide coverage to Boughton for any
liability established in the wrongful death action
and that plaintiff had no duty to defend Boughton
in the wrongful death suit.

At the conclusion of a bench trial on plaintiff's
declaratory judgment action, the trial court ruled
that the "intentional and expected" acts exclusion
in the homeowner's policy relieved plaintiff of the
duty to defend and provide coverage to Boughton
in the wrongful death action. Defendants appeal as
of right from the judgment entered in favor of
plaintiff. We affirm.

Defendants argue that, because Boughton was
adjudicated to be insane at the time of the shoot-
ing, he could not intend or expect to cause his
wife's death. Cases involving a policy which ex-
cludes both intentional and expected injuries hold
that, in order to avoid liability through the exclu-
sion for expected injury, the insurer must show
that the injury was the natural, foreseeable, ex-
pected, and anticipatory result of an intentional

act. *State Farm Fire & Casualty Co v Groshek,* 161 Mich App 703, 708-709; 411 NW2d 480 (1987); *Allstate Ins Co v Freeman,* 160 Mich App 349, 356; 408 NW2d 153 (1987), lv gtd 430 Mich 857 (1988); *State Farm Fire & Casualty Co v Jenkins,* 147 Mich App 462, 467-468; 382 NW2d 796 (1985). Under these cases, acts by the insured which have unexpectedly severe consequences fall within the exclusion, even when the insured has an affirmative defense or justification for his actions. Thus, in *Groshek, supra,* when the insured believed that he was justified in assaulting another to prevent the rape of a friend, the resultant injuries to the assault victim were excluded from coverage as the expected result of an intentional act. This Court has drawn the same conclusion when the insured asserted that his actions were justifiable self-defense. *Yother v McCrimmon,* 147 Mich App 130; 383 NW2d 126 (1985).

This Court has also held that the insured's guilty plea or conviction in a criminal prosecution for a specific intent crime is conclusive on the issue of intent in the subsequent civil action for purposes of invoking the policy exclusion. *Groshek,* 161 Mich App 711; *Jenkins,* 147 Mich App 468-469; *Yother,* 147 Mich App 134. In *Aetna Casualty & Surety Co v Sprague,* 163 Mich App 650; 415 NW2d 230 (1987), the insured was found guilty but mentally ill of murder. This Court held that his insurer had no duty to defend or provide coverage in a subsequent wrongful death action since his mental illness did not negate the specific intent element of the murder conviction.

In the present case, unlike those cases where the insured's intent was established as a matter of law by a guilty plea or conviction, defendant Boughton was found not guilty of murder by reason of insanity. At first glance, under *Groshek, Jenkins,*

*Yother,* and *Sprague,* it would thus appear that defendants could demonstrate, as a matter of law, that Joni Boughton's death was not "expected or intended by the insured." We conclude, however, that where an insured is found not guilty by reason of insanity the insurer is not precluded from proving at trial that the insured's conduct falls within an "intentional and expected" acts exclusion in a homeowner's policy.

The issue whether an intentional acts exclusion in a homeowner's policy precludes coverage for a person previously acquitted of criminal charges by reason of insanity is a question of first impression in this state.[1] Courts which have considered the issue are split. One line of cases holds that, if an insured suffered from a mental illness or insanity, the insured's act cannot be intentional for purposes of an exclusion. See *Globe American Casualty Co v Lyons,* 131 Ariz 337; 641 P2d 251 (1981), *Congregation of Rodef Sholom of Marin v American Motorists Ins Co,* 91 Cal App 3d 690; 154 Cal Rptr 348 (1979), *Mangus v Western Casualty & Surety Co,* 41 Colo App 217; 585 P2d 304 (1978), *Arkwright-Boston Manufacturers Mutual Ins Co v Dunkel,* 363 So 2d 190 (Fla App, 1978), *Aetna Casualty & Surety Co v Freyer,* 89 Ill App 3d 617; 411 NE2d 1157 (1980), *Von Dameck v St Paul Fire & Marine Ins Co,* 361 So 2d 283 (La App, 1978), *Ruvolo v American Casualty Co,* 39 NJ 490; 189 A2d 204 (1963), and *Nationwide Mutual Fire Ins Co v Turner,* 29 Ohio App 3d 73; 503 NE2d 212 (1986). See also Anno: *Liability Insurance: Intoxi-*

---

[1] We are aware of *Allstate Ins Co v Miller,* 175 Mich App 515; 438 NW2d 638 (1989), but believe it is distinguishable from the instant case, as in *Allstate* the insured was not acquitted of criminal charges by reason of insanity prior to the insurer's declaratory judgment action. In any event, we disagree with the *Allstate* decision to the extent that it may be construed to hold that an insane person cannot act intentionally for purposes of an insurance policy's intentional acts exclusion.

*cation or Other Mental Incapacity Avoiding Application of Clause in Liability Policy Specifically Exempting Coverage of Injury or Damage Caused Intentionally By or At Direction of Insured,* 33 ALR4th 983. The rationale supporting this line of cases is generally that the purpose of the policy exclusion is to preclude insureds from benefitting financially when they cause injury, and this purpose will not deter a person who lacks mental capacity to conform his conduct to acceptable standards.

A second line of cases holds that an injury inflicted by a person who is mentally ill or insane may be intentional within the meaning of the exclusion. These decisions are usually based on the conclusion that the insured may have the purpose and volition to cause an injury, although he is mentally incapable of distinguishing whether his acts are right or wrong. See, e.g., *Aetna Casualty & Surety v Dichtl,* 78 Ill App 3d 970; 398 NE2d 582 (1979), *Colonial Life & Accident Ins Co v Wagner,* 380 SW2d 224 (Ky App, 1964), *Kipnis v Antoine,* 472 F Supp 215 (ND Miss, 1979), *Rider v Preferred Acc Ins Co,* 183 AD 42; 170 NYS 974 (1918), aff'd 230 NY 530; 130 NE 881 (1920), *De-Loache v Carolina Life Ins Co,* 233 SC 341; 104 SE2d 875 (1958), *Pruitt v Life Ins Co of Va,* 182 SC 396; 189 SE 649 (1937), and *Johnson v Ins Co of North America,* 232 Va 340; 350 SE2d 616 (1986). See also *Rajspic v Nationwide Mutual Ins Co,* 110 Idaho 729; 718 P2d 1167 (1986), and *Rajspic v Nationwide Mutual Ins Co,* 104 Idaho 662; 662 P2d 534 (1983). See generally 10 Couch on Insurance 2d, § 41:676 (revised 1982) and 33 ALR4th 983, *supra.*

We agree with the line of cases holding that the acts of a person deemed insane may be intentional within the meaning of an "intentional and ex-

pected" acts exclusion. We find persuasive the reasoning of the Court in *Johnson, supra:*

> On the surface, there appears to be a blatant inconsistency in concluding, as we do, that a person may be criminally insane when shooting another, and thus avoid full criminal sanctions, and yet that same individual can be denied insurance coverage because he "intended" to shoot his victim. A more careful analysis, however, will reveal there is no inconsistency at all.
>
> In the law, there are many situations in which a person may intentionally injure or kill another and not be subject to criminal punishment. For example, an individual may kill in self-defense. The executioner may kill with the sanction of the State. A soldier may injure or kill under rules of combat. This conduct is intentional, but it is also excusable. Likewise, an individual may be excused from penalty if he is insane at the time he commits a criminal act. As here, he may do the act with every intention of consummating it, but when it is shown that he was mentally ill, he is excused from the imposition of the usual sanctions. "The absence of punishment, however, does not retrospectively expunge the original intention." *Colonial Life & Accident Ins Co,* 380 SW2d at 226. [232 Va 348].

This analysis is consistent with that used by this Court in other cases involving intentional but justifiable acts that fall within policy exclusions for intentional or expected injuries. See, e.g., *Groshek, supra.* Moreover, it is not in conflict with those decisions holding that a conviction or plea of guilty establishes intent as a matter of law. See, e.g., *Sprague.* A conviction represents a positive finding of criminal intent beyond a reasonable doubt. An acquittal by reason of insanity on the other hand is *not* an adjudication of lack of intent, but is a determination that the prosecution failed

to prove beyond a reasonable doubt that a defendant was capable of forming the intent necessary to be convicted of a crime. Compare *Aetna Casualty v Dichtl, supra.* Failure to prove sanity beyond a reasonable doubt and ability to prove by a preponderance of the evidence that an insured intended and expected injury are not necessarily contradictory propositions. We recognize that there will be cases where insanity manifests itself such that the insured cannot intend or expect to cause an injury; an actor may believe, for example, that he is peeling a banana rather than pointing a pistol. See *Johnson, supra* at 232 Va 347. However, a broad holding that a criminal adjudication of insanity of the insured as a matter of law prevents application of policy exclusions, such as the one in the instant case, is inappropriate.

Here, the court, after a bench trial in the declaratory judgment action, found that Boughton's act caused an intentional or expected injury, the death of his wife. MCR 2.613(C) provides that findings of fact made by a trial court in a bench trial may not be set aside unless clearly erroneous. Great regard must be given to the special opportunity of the trial court to judge the credibility of the witnesses it viewed. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976).

We find no clear error. Ron Boersma, Joni Boughton's boyfriend who witnessed the shooting, testified that Boughton entered her residence with a shotgun and informed the couple that he was going to kill them both, alternately pointing the shotgun at either Boersma or Joni. When one of the Boughton children ran into the living room,

Boughton told Joni to put their son back to bed because he did not want the child to see what was happening. While the testimony was somewhat contradictory, the trial court was well within its power to judge the credibility of the witnesses and decide that Joni Boughton's death was not caused by an accidental discharge of the gun as claimed by her husband, but by an intentional shooting by Boughton. There was also some expert evidence that defendant was capable of formulating the intent to kill his wife and understood the consequences of discharging a gun into a human body. Additionally, a friend of Boughton's testified that the night before the fatal shooting Boughton said that if he saw Joni and Boersma together he would have to kill them. The evidence on the record supports the trial court's conclusion that Boughton intended and expected bodily injury. Given the lower standard of proof in the civil case, there was no contradiction in acquitting Boughton on grounds of insanity at his criminal trial and subsequently finding in the civil action that Joni Boughton's death was intentional and expected.

Affirmed.

SULLIVAN, P.J., concurred.

G. SCHNELZ, J. *(dissenting).* I respectfully dissent.

In the instant case, the criminal prosecution of the insured Boughton resulted in a determination that Boughton was not guilty by reason of insanity. In contrast to a finding of guilty but mentally ill or a finding based on believed defenses of excuse or justification, a finding of insanity legally negates the requisite felonious intent. See *People v Ramsey*, 422 Mich 500, 547; 375 NW2d 297 (1985) (LEVIN, J., dissenting); LaFave & Scott, Criminal

Law (Hornbook Series, 1972), pp 268-274. The fact that the finding of insanity was made by way of a directed verdict rather than a verdict actually delivered by the jury does not undermine the dispositive nature of the verdict. A directed verdict is a judgment on the merits of an issue actually litigated. *Latimer v William Mueller & Son, Inc,* 149 Mich App 620, 641; 386 NW2d 618 (1986).

I believe that it is an exercise in sophistry to conclude that a person who is found not guilty by reason of insanity could, in a later action, be declared to have committed an act that was "expected or intended" by that party. The finding of insanity cannot be legally or logically reconciled with the trial court's findings in the declaratory action that Boughton was not insane at the time of the shooting. The lower standard of proof in a civil case just cannot be applied. It merely begs the question.

I note in particular that another panel of this Court has recently addressed the issue whether a person's insanity precludes him or her from acting "intentionally" within an exclusionary clause under a homeowner's insurance policy. See *Allstate Ins Co v Miller,* 175 Mich App 515; 438 NW2d 638 (1989). In *Allstate,* the panel agreed with the line of cases which hold that, if an insured suffers from insanity, the insured's act cannot be intentional for purposes of an exclusion in an insurance policy. Contra, *Johnson v Ins Co of North America,* 232 Va 340; 350 SE2d 616 (1986). This Court in *Allstate* further concluded that an exclusionary clause similar in language to the exclusionary clause in the instant case was ambiguous and therefore would have to be construed against the insurer.

I agree with the above conclusions reached by

the panel in *Allstate.* I do not find the instant case to be distinguishable from *Allstate.* Since an adjudication of the insured's insanity was made in the instant case, I believe the exclusionary clause cannot be invoked and coverage precluded under the homeowner's insurance policy. Moreover, if the insurance companies are concerned over this, it would be a simple matter to make insanity a specific exclusion.

I would reverse the judgment in favor of plaintiff and remand this matter to the trial court for entry of a judgment declaring that plaintiff has a duty to provide coverage to and defend Boughton in the wrongful death action.